UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHANA S.,

               Plaintiff,

   v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

               Defendant.

CASE NO. C18-1483-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1964.[1] She completed the eleventh grade and has past relevant work as a caregiver. (AR 45, 55.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

1    Plaintiff filed DIB and SSI applications in January and April 2015 respectively, alleging disability beginning December 31, 2013. (AR 291, 296.) The applications were denied at the initial level and on reconsideration.

On July 17, 2017, ALJ Kimberly Boyce held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 38-59.) At hearing, plaintiff amended her alleged onset date and requested a closed period of disability from February 12, 2015 until June 1, 2016, when she returned to work at the substantial gainful activity (SGA) level. (AR 41-44.) On November 29, 2017, the ALJ issued a decision finding plaintiff not disabled. (AR 22-32.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on August 30, 2018 (AR 2), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff engaged in SGA beginning June 1, 2016, noting her hiring by employers in June and October 2016, her testimony she worked thirty-nine hours a week, and her representative's report her earnings were above SGA level. However, because there had been a continuous twelve-month period of no SGA, the ALJ rendered findings addressing a closed period.

At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's fibromyalgia, degenerative disc disease, depression, and post-traumatic

stress disorder (PTSD) severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform medium work with the following limitations: occasionally stoop, kneel, crouch, and crawl; understand, remember, and carry out unskilled, routine, and repetitive work that could be learned by demonstration and with tasks predetermined by the employer; occasional work setting changes; occasional interaction with supervisors; work in proximity to co-workers, but not in a teamwork, cooperative effort; and no interaction with the general public as an essential element of the job, but occasional, incidental contact not precluded. With that assessment, the ALJ found plaintiff unable to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a kitchen helper, hand packager, and lab equipment cleaner.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in rejecting the opinions of two examining specialists. She requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Medical Opinions

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where contradicted by another doctor, as in this case, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Plaintiff argues the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of two examining doctors.

A.  Dr. Anselm Parlatore

Dr. Anselm Parlatore conducted a psychiatric evaluation of plaintiff on May 6, 2015. (AR 574-78.) He opined plaintiff had the ability to reason and understand, but that her memory, concentration, pace, and persistence are all markedly impaired, as is her social interaction and adaptation. (AR 577.) Plaintiff "barely does simple domestic repetitive chores and has not been able to work with peers, supervisors or the general public." (*Id.*) Dr. Parlatore found all plaintiff's activities of daily living and social functioning markedly impaired, stating she could not tolerate increased mental demands associated with competitive work or appropriateness, with

independence, sustainability, quality and effectiveness of social functioning and activities of daily living all markedly impaired. (*Id*.) Also, plaintiff could not understand, remember, and persist in tasks by following detailed instructions, cannot perform activities in a schedule, maintain regular attendance, be punctual, learn new tasks, perform routine tasks, adapt to changes, make simple work-related decisions, communicate and perform effectively, complete a normal work week or day, or maintain appropriate behavior in a work setting "all to a marked degree." (AR 578.)

The ALJ gave Dr. Parlatore's opinion little weight. (AR 30.) She noted Dr. Parlatore's description of plaintiff as tense, anxious, nervous, and shaky and that she was able to follow a three-step command, but otherwise did not perform well on mental status examination (MSE). The ALJ found the description of plaintiff as having markedly impaired memory, concentration, persistence, pace, social interactions, and adaptation "descriptive findings of severity" not describing functional limitations. (*Id*.) While Dr. Parlatore also found marked impairment in social functioning and activities of daily living, those findings were based on plaintiff's self-reports and the reports of her best friend, who appeared at the examination. Finally, Dr. Parlatore's determination plaintiff could not perform routine tasks or make simple work-related decisions was inconsistent with plaintiff's subsequent ability to return to work.

Plaintiff argues the ALJ erred in finding Dr. Parlatore based his opinions on her self-reports and the reports of her friend. She asserts this reason lacks specificity, notes the propriety of considering a claimant's reports, and observes that Dr. Parlatore reviewed records, conducted a clinical interview, and performed a MSE. During that MSE, plaintiff remembered only two out of four objects after a delay, could not perform serial sevens or threes, incorrectly spelled "world" backwards, did not complete the digit span and retention test, and "went blank" on proverbial testing. (AR 577.) Plaintiff contends the ALJ appeared to rely on the results of Dr. Susan

Hakeman's MSE conducted a month-and-a-half earlier, despite the fact Dr. Hakeman assessed similar limitations. Given her acknowledgment her mental health later improved with treatment, plaintiff avers the ALJ unreasonably rejected Dr. Parlatore's opinion based on inconsistency with her return to work.

Plaintiff also addresses other portions of the ALJ's decision in conjunction with the analysis of Dr. Parlatore's medical opinion. For example, while appearing to have found her activities less limited than Dr. Parlatore found, the ALJ unreasonably relied on limited activities, such as her ability to watch television and use a computer on a daily basis. (*See* AR 25.) While citing her ability to administer medication as a caregiver as evidence she could sustain concentration, persistence, and pace, plaintiff did not work as a caregiver during the relevant period and did not improve enough to return to work until June 2016. While noting a reference to her studying for the Commercial Driver's License (CDL) test, the ALJ did not acknowledge the record containing that reference notes her difficulty with irritability when driving and other anger problems, and lacks any detail regarding the CDL studying or test. (*See* AR 531.) Plaintiff minimizes the ALJ's reliance on things like a reference to her continued driving and ability to maintain contact with friends and family, have a boyfriend, and live in the country, enjoying gardening, exercising daily, and visiting cows in the field. (*See* Dkt. 8 at 9-10.) Plaintiff also rejects the ALJ's depiction of her symptoms as situational. She avers her inability to deal with situational stressors, including the type occurring in the workplace, when she was evaluated by Dr. Parlatore and that that inability to deal with stress must be considered in assessing RFC. *See* Social Securing Ruling (SSR) 85-15.

Plaintiff fails to undermine the substantial evidence support for the ALJ's decision. The ALJ accurately observed that Dr. Parlatore's findings as to marked impairment in the categories

considered at step three were no more than descriptive findings of severity and did not identify or describe specific functional limitations. (*See* AR 30, 577; *see also* AR 25-26 (at step three, the ALJ explained the basis for finding plaintiff had mild limitation in understanding, remembering, and applying information and adapting and managing herself, and moderate limitation in interacting with others and in concentration, persistence, and pace).)

The ALJ properly considered Dr. Parlatore's significant reliance on plaintiff's subjective self-reporting and the reports of her friend. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating [or examining] physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). The ALJ's reliance on that reporting is apparent from the face of the report. (*See, e.g.*, AR 576 ("She sleeps all day, she barely does any of the housework and Dianne confirms that, 'she used to be a neat freak and a cook when she was younger, she's changed'. Her 20 year old heroin addict daughter is there and there was a recent home invasion because of the daughter's heroin problem. Someone pointed a gun at her head. There is a dog and a cat there. She very rarely ventures out. She stays in bed most of the day. She doesn't belong to any churches, clubs, groups, or organizations and she doesn't socialize. She is in an abusive relationship with an alcoholic man."); AR 577 ("She barely does simple domestic repetitive chores and has not been able to work with peers, supervisors or the general public."))

The ALJ also reasonably found inconsistency between Dr. Parlatore's determination plaintiff could not perform routine tasks or make simple work-related decisions and her subsequent ability to return to work. *See generally Tommasetti*, 533 F.3d at 1041 (inconsistency with the record properly considered); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)

ORDER
PAGE - 7

(inconsistency with a claimant's level of activity properly considered); 20 C.F.R. §§ 404.1527(c)(4) and (6), 416.927(c)(4) and (6) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion."; ALJ properly considers any factor that tends to support or contradict the opinion of a physician). As the ALJ observed, plaintiff testified that, at the time of the hearing, her pain level was worse than it had ever been. (AR 27, 47-54.) "Yet, she was working at [SGA] level at that time. This does not support her allegation that she was too disabled to work during her alleged closed period." (AR 27.) Plaintiff also testified she was not involved in any counseling at the time of the hearing and had "discontinue[d] her psychotropic medication in order to return to work." (*Id*.) Rather than reflecting improved mental health allowing for her return to work, plaintiff testified her mental health and physical issues had continued: "Very anxious, depressed, the mood – my mood's up and down all the time, constantly, crying spells which you saw today before I came in here. . . Yeah, they still – the anxiety and the mood, you know, you're up then you're down. It's all the time. . . . But I'm in constant pain too." (AR 54; *see also* AR 49 (describing her memory loss as "really bad.")) 

In fact, plaintiff repeatedly explained her return to work as unrelated to her impairments. (AR 47-49 ("[A] I have to work to survive. Otherwise I would be homeless, and I'm too old to be homeless. I have to pay rent, bills."; " [Q] So if you're in more pain now, and yet you're able to work 39 hours a week, how do I find you disabled when you were in less pain? [A] I don't know, I have to work, ma'am, to survive. Otherwise I'd be on the street. That's why I'm working. I have to work. . . . To survive."; "[Q] [I]n March 2015, you said you couldn't vacuum. . . . Hard to stand doing dishes and mopping, laundry. Can't be around people. You . . . don't take showers like you're supposed to. So it sounds like you're doing all of those things now? [A] Yeah, in

order to survive, ma'am, I have to.")) Plaintiff, at least in part, associated her improvement with her improved living situation. (AR 51-52 ("[Q] And is that better now? [A] Yeah, the – my children do not live with me. I'm away from all the bad stuff. I live with an older man, and it's quiet where I live. But I still have a lot of issues that I need to work out. I do a lot of crying and stuff like that, depressed."))

Consistent with plaintiff's testimony, the ALJ addressed the situational nature of plaintiff's condition. Plaintiff had "unusual stress" in 2014, including issues associated with her daughter's heroin and methamphetamine addiction, her partner's alcohol problem, her daughter's threatening behavior, and plaintiff's subsequent report of passive suicidal ideation and diagnoses with bipolar disorder, PTSD, and dysthymic disorder. (AR 29.) She eventually began counseling, which continued in 2015 and 2016, and "admitted she felt happier when she was working." (*Id.*) Her symptoms "appeared to remain largely situational" and improved when she improved her living situation. (*Id.*) "Specifically, her reported symptoms of exhaustion and anger were attributed to her daughter's ongoing addiction issues, which were preoccupying." (*Id.*) She changed her living environment in 2015, no longer living with her children, "who were largely the source of her stress." (*Id.*) She admitted to a significant decrease in her stress without her children, her counseling sessions generally focused on situational concerns, and she appeared only somewhat anxious at appointments. (*See* AR 504-67.) The record supports the ALJ's interpretation of the evidence. (*See, e.g.*, AR 680 (May 31, 2016: "She is doing quite well which she attributes to 'not having [s]o much drama [in] my life. . . She is going for a job interview today and wants to try to get a job if possible and because 'I just can't live on the money I have.' She's been in a relationship with another man for the last 2 months. . . . She feels very comfortable about this relationship and thinks it is the most healthy 1 she's ever engaged in. She is setting better boundaries with her

children. She is committed to not using drugs or alcohol and having a healthy lifestyle."))

The ALJ also reasonably considered evidence of other activities and abilities, including watching television and using a computer, maintaining contact with friends and family, living with two different boyfriends, traveling out of state, visiting her mother in a nursing home, studying for a test, driving, caring for pet cats, and demonstrating memory recall and counting by serial sevens in testing with Dr. Hakeman. (AR 25-26.) The ALJ's interpretation of the evidence, while different from that offered by plaintiff, is rational and appropriately upheld. *Morgan*, 169 F.3d at 599 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") *See also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.")

The ALJ, in sum, provided the necessary specific and legitimate reasons for rejecting Dr. Parlatore's opinion as to the degree of plaintiff's impairment. Plaintiff's arguments to the contrary lack merit.

B.  Dr. Susan Hakeman

Dr. Hakeman conducted a psychological evaluation of plaintiff on behalf of the Department of Social and Health Services on March 16, 2015. (AR 568-71.) Dr. Hakeman assessed a Global Assessment of Functioning (GAF) score of 46 (AR 570), which describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) (DSM-IV-TR). She also assessed numerous marked and severe limitations in plaintiff's ability to perform basic work activities, including, but not limited to, very short and simple instructions, simple work-related decisions, maintaining appropriate behavior, and completing a normal work day and week. (AR 570).

The ALJ gave little weight to Dr. Hakeman's evaluation. (AR 30.) She found the GAF score provided little benefit in determining functioning, stating it refers only to symptom severity or functioning at a particular moment and can vary widely between treatment providers. She found the mostly marked to severe limitations in basic tasks identified on the form Dr. Hakeman completed inconsistent with the treatment notes. For example, Dr. Hakeman found plaintiff markedly impaired in relation to short and simple instructions, but plaintiff studied for the CDL examination later that same year. Plaintiff also returned to work. The ALJ further found plaintiff's presentation on MSE did not support the marked to severe ratings, noting plaintiff appeared calm, cooperative, goal directed, and able to count by serial sevens.

Plaintiff raises the same arguments as outlined above in challenging the ALJ's reliance on the evidence she studied for the CDL examination and returned to work. For the reasons set forth above, the ALJ reasonably considered inconsistency between evidence in the record and Dr. Hakeman's opinion as to the degree of plaintiff's impairment.

Plaintiff also asserts Dr. Hakeman was aware of the MSE findings, but found plaintiff's "history and pattern of symptoms" supported by the limitations assessed. (Dkt. 8 at 13.) She argues the ALJ improperly substituted her opinion over that of the examining psychiatrist. The Court, however, finds the ALJ's identification of inconsistency between the degree of impairment assessed and the findings on examination rational. *See Morgan*, 169 F.3d at 603 (ALJ appropriately considers internal inconsistencies within a physician's report). Dr. Hakeman's report does appear to rely significantly on a history and pattern of symptoms, but only as reported by plaintiff. She does not identify any records reviewed. (AR 568.) Instead of identifying clinical findings of mental health symptoms, Dr. Hakeman wrote "see above", referencing her recounting of plaintiff's history and symptom reporting. (AR 568-69.) She based the GAF score on

"presentation and symptom description" and the form contains no other explanation for the marked and severe boxes checked in relation to basic work activities. (AR 570.) Finally, while including some findings supporting impairment, such as closing her eyes several times, a report of low mood and suicidal ideation at times, and decreased range of affect, the MSE fell largely within normal limits. (AR 571 (calm and cooperative, speech within normal limits to perhaps a little slowed, goal directed thought process and content with no psychotic material, full orientation, no perception issues, full immediate recall, full delayed recall with a clue on one missed object, ability to spell "world" backwards and forwards and perform serial seven subtractions, and fair insight and judgment).)

The ALJ, finally, reasonably found the GAF score assigned to be of little benefit in relation to functioning. *See Hughes* v. *Colvin,* No. 13-35909, 2015 U.S. App. LEXIS 6131 at *2 (9th Cir. Apr. 15, 2015) ("The ALJ did not err in failing to address Dr. Caverly's GAF score, because a GAF score is merely a rough estimate of an individual's psychological, social, or occupational functioning used to reflect an individual's need for treatment, but it does not have any direct correlative work-related or functional limitations."). *Accord Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). *See also* DSM-V at 16-17 (5th ed. 2013) (omitting GAF rating in most recent version of the DSM); Administrative Message 13066 (explaining that, while the Social Security Administration continues to receive and consider GAF scores from acceptable medical sources as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis). The ALJ, accordingly, provided the necessary specific and legitimate reasons for rejecting Dr. Hakeman's opinion.

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 5th day of June, 2019.

Mary Alice Theiler
United States Magistrate Judge